Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Valerie García García <br><br> Recurrente <br><br> vs. <br><br> Auto Union Inc. Automás del Caribe LLC h/n/c Auto Centro Nissan First Bank of PR Motor Ambar Inc. Cooperativa de Seguros Múltiples <br><br> Recurridos | KLRA202300667 | **REVISIÓN ADMINISTRATIVA** procedente del Departamento de Asuntos del Consumidor <br><br> Querella Núm.: SAN-2020-0007626 <br><br> Sobre: Compraventa Vehículos de Motor |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de febrero de 2024.

Comparece ante nos, la señora Valerie García García (Sra. García García o recurrente), quien presenta recurso de revisión administrativa en el que solicita la revocación de la "Resolución" emitida el 31 de octubre de 2023,[1] por el Departamento de Asuntos del Consumidor (DACo). Mediante dicha determinación, el DACo declaró No Ha Lugar la "Querella" presentada por la recurrente, y desestimó su reclamación.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

---

[1] Notificada en igual fecha.

**I.**

El 8 de octubre de 2020, la Sra. Rodríguez Díaz presentó una "Querella" ante el DACo contra Auto Union Inc. (Auto Union), Automás del Caribe LLC h/n/c Auto Centro Nissan (Auto Centro Nissan), First Bank of PR (First Bank), Motor Ambar, Inc. (Motor Ambar) y la Cooperativa de Seguros Múltiples (CSM) (en conjunto, recurridos). En esencia, alegó que compró un vehículo y que, a la semana de haberlo adquirido, comenzó a hacer un ruido en el área del motor. Adujo que, a causa de ello, visitó el concesionario en varias ocasiones y, aun cuando le honraron la garantía y le cambiaron el motor del vehículo, persistía el alegado desperfecto mecánico. Solicitó la resolución del contrato de compraventa por vicios redhibitorios.

Tras varios trámites procesales, el 19 de mayo de 2023, el DACo emitió "Resolución Parcial" desestimando la reclamación contra Motor Ambar y CSM. Se señaló vista en su fondo para el 22 de junio de 2023, a la cual comparecieron ambas partes. Tras un análisis de la prueba documental y testifical presentada, el 31 de octubre de 2023,[2] el DACo emitió una "Resolución" mediante la cual formuló las siguientes determinaciones de hecho, las cuales hacemos formar parte íntegra del presente dictamen:

> *1. La parte querellante se identifica como Valerie García García (en adelante, parte querellante), residente del municipio de Trujillo Alto. Su dirección postal de récord es: Calle 7 A-51, Terrazas de Cupey, Trujillo Alto, Puerto Rico 00976.*
>
> *2. La parte coquerellada se identifica como Auto Unión, una corporación con fines de lucro autorizada a realizar negocios en Puerto Rico. Su dirección postal de récord es la siguiente: 1183 Ave. 65th de Infantería San Juan, P.R. 00924.*
>
> *3. La parte coquerellada se identifica como Automás del Caribe LLC h/n/c Auto Centro Nissan (Autocentro o Autocentro Nissan), una corporación con fines de lucro autorizada a realizar negocios en Puerto Rico con número de Registro Núm. 310491 según consta en el*

---

[2] Notificada ese mismo día.

*Registro de Corporaciones del Departamento de Estado. La dirección postal de su agente residente es la siguiente: PO Box 191958, San Juan, P.R. 00919-1958.*

*4. La parte coquerellada First Bank of PR (en adelante First Bank o el Banco) fue la entidad que financió la compraventa del vehículo de la marca Nissan, modelo Rogue, del año 2018.*

*5. En o alrededor del día 2 de mayo de 2018 la parte querellante adquirió mediante compraventa al concesionario coquerellado Auto Unión un vehículo de motor nuevo, de la marca Nissan, modelo Rogue del año 2016. El precio de venta total de la unidad fue de $47,782.90.*

*6. El vehículo de motor objeto de la controversia estaba cubierto por una garantía de manufacturera de tres (3) años o 36,000 millas, y en tren motriz de cinco (5) años o 60,000 millas, lo que ocurra primero.*

*7. Desde en o alrededor del mes de julio de 2019, la unidad reflejó ciertos desperfectos en su funcionamiento, en específico, ruidos en el motor y vibraciones al manejarse. Como producto de dichos desperfectos la parte querellante hizo una reclamación en garantía.*

*8. Como parte de la cubierta de garantía aplicable al vehículo, el coquerellado Motorambar ordenó el que se le reemplazara el motor completo a la unidad. Dichas tareas fueron realizadas y el motor que trajo la unidad de fábrica fue reemplazado.*

*9. A pesar de dicho reemplazo de motor en garantía, la querellante alegaba que los problemas de ruidos y vibraciones en el vehículo continuaban. Producto de esto, la unidad fue llevada en repetidas ocasiones al centro de servicio del coquerellado Automás del Caribe y/o Auto Centro Nissan.*

*10. Todas las condiciones o desperfectos reflejados en el diagnóstico del vehículo en el centro de servicio fueron reparados de manera adecuada por el coquerellado Automás del Caribe y/o Auto Centro Nissan conforme las hojas de servicio admitidas en evidencia.*

*11. El vehículo de motor objeto de la querella fue reparado en garantía sin ningún costo a la parte querellante.*

*12. Dentro de las reparaciones en garantía realizadas, se incluyó el reemplazo del motor. El motor original de la unidad tenía como número de serie núm. 25547058T.*

*13. El día 20 de enero de 2021 un técnico de investigación del DACO realizó una inspección del vehículo. Conforme los resultados de dicha inspección el técnico asignado realizó una evaluación y concluyó que: "se inspeccionó el vehículo de motor en cuestión y se*

*pudo corroborar que no presentaba fallos al momento de la inspección, el motor operó dentro de los parámetros del fabricante".*

*14. El técnico de investigación del DACO realizó una prueba de carretera manejando el vehículo en cuestión y añadió en su informe lo siguiente: "el motor no produjo fallos durante la prueba de carretera, el motor operó satisfactoriamente".*

*15. Los siguientes documentos fueron admitidos en evidencia como prueba documental y marcados como Exhibits:*

> *1. Contrato de Compraventa. Exhibit #1.*
> *2. Contrato de Venta al por Menor a Plazos. Exhibit #2.*
> *3. Work Order # 52746. Exhibit #3.*
> *4. Work Order # 53125. Exhibit #4.*
> *5. Work Order # 53413. Exhibit #5.*
> *6. Work Order # 58633. Exhibit #6.*
> *7. Work Order # 62123. Exhibit #7.*
> *8. Copia del "Vehicle Identification Number". Exhibit #8.*
> *9. Work Order # 122996. Exhibit #9.*
> *10. Work Order # 124280. Exhibit #10.*
> *11. Video. Exhibit #11.*
> *12. Copia de Correo Electrónico. Exhibit #12.*

*16. La querellante gozó del uso y disfrute del vehículo luego del reemplazo de motor cubierto como reparación en garantía.*

*17. La querellante no presentó prueba pericial o testimonial adicional sobre los alegados desperfectos en el vehículo y/o para sustentar sus alegaciones de que el vehículo estaba inservible por los alegados desperfectos.[3]*

Consideradas las anteriores determinaciones de hecho, el DACo declaró No Ha Lugar la "Querella" presentada por la Sra. García García, y desestimó su reclamación. Concluyó que, la cubierta en garantía brindada por los recurridos fue adecuada y acorde a los términos y condiciones de la misma, toda vez que no se probó que los desperfectos no fueron reparados en garantía. Por el contrario, determinó que la evidencia demostró que el motor original fue reemplazado y que, después de ello, la unidad no presentó diagnóstico que ameritara reparación.

---

[3] Aunque en la "Resolución" recurrida aparecen 18 determinaciones de hechos, lo cierto es que se omitió el número 8.

Inconforme, el 20 de noviembre de 2023, la Sra. García García presentó una "Moción en Solicitud de Reconsideración". Empero, el DACo no actuó sobre esta petición dentro de los 15 días de recibida.[4]

Aún insatisfecha, la Sra. García García recurre ante este foro apelativo intermedio, y señala la comisión de los siguientes errores, a saber:

> *Primer Error: Erró el Departamento de Asuntos del Consumidor al emitir una Resolución que no toma en consideración todos los hechos que obran del expediente administrativo, así como la prueba presentada.*

> *Segundo Error: Erró el DACO al no decretar la Resolución del contrato de compraventa al no considerar los defectos presentados por la apelante-recurrente como redhibitorios.*

**II.**

**-A-**

En virtud de la Ley Núm. 7 del 24 de septiembre de 1979, 10 LPRA sec. 2051 *et seq.*, mejor conocida como la Ley de Garantías de Vehículos de Motor, según enmendada, el DACo adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 del 6 de junio de 2006 (en lo sucesivo, Reglamento de Garantías). Este último cumple varios propósitos, tales como: (1) proteger al consumidor y sus inversiones en la adquisición de vehículos de motor; (2) procurar que el vehículo sea seguro y cumpla con el propósito por el cual fue adquirido; y (3) prevenir prácticas ilícitas en la venta de vehículos de motor. Véase, Art. 2 del Reglamento de Garantías. Por esta razón, las disposiciones de este cuerpo reglamentario deberán interpretarse liberalmente y en favor del consumidor. Véase, Art. 4 del Reglamento de Garantías.

---

[4] Véase, Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9655.

En lo que nos concierne, la Regla 15.1 del Reglamento de Garantías, *supra*, dispone lo siguiente:

> *Todo distribuidor autorizado o concesionario, representante de fábrica, distribuidor de fábrica, distribuidor independiente, y vendedor deberá, a nombre y en representación del fabricante o manufacturero, honrar la misma garantía de fábrica que el fabricante o manufacturero otorgue a los vehículos de motor, en términos de millaje y duración, en los Estados Unidos continentales, excepto que por ley se establezca una garantía mínima distinta, y será siempre aplicable la que resulte mayor al alcance y amplitud de sus beneficios. Esto independientemente del lugar donde y de la persona de quien el consumidor adquiera dicho vehículo y que el fabricante o manufacturero brinde el servicio de garantía de fábrica en un lugar de Puerto Rico.*

Por su parte, la Regla 22 del Reglamento de Garantías, *supra,* dispone que, en caso de que un vehículo nuevo tenga defectos, el vendedor posee una oportunidad razonable para repararlos. Sin embargo, si el vendedor no quiere o no puede reparar el defecto dentro de un término razonable, el DACo está facultado para decretar la resolución del contrato o reducir el precio de venta, a elección del comprador. *Íd.*

**-B-**

El Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et al,* define el contrato como "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Art. 1230 del Código Civil, 31 LPRA sec. 9751. Adicionalmente, establece que "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". Art. 1237 del Código Civil, 31 LPRA sec. 9771. Una vez las partes prestan su consentimiento, éstos quedarán obligados al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes, ante sus sucesores y

ante terceros en la forma que dispone la ley". Art. 1233 del Código Civil, 31 LPRA sec. 9754. Esa obligación que posee una parte para cumplir con lo pactado "se fundamenta en el principio de la buena fe, el cual exige no defraudar la confianza que otro ha puesto en una promesa o conducta". *BPPR v. Sucn. Talavera*, 174 DPR 686, 693 (2008). Así, para que un contrato se considere válido, se requiere que concurran tres elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto del contrato y (3) la causa de la obligación que se establezca. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 284 (2021). La falta de alguno de ellos será causa de nulidad del contrato y, por tanto, inexistente en el orden jurídico. *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 188 (2016).

En Puerto Rico rige el principio de libertad de contratación. Por tanto, una persona puede "contratar o no hacerlo, y hacerlo, o no, con determinada persona". Art. 1232 del Código Civil, 31 LPRA sec. 9753. Asimismo, las partes pueden acordar cualquier tipo de cláusula, siempre y cuando ésta "no sea contraria a la ley, a la moral o al orden público". *Íd.* El contrato de compraventa es uno bilateral, por el cual "la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y ésta a su vez se obliga a pagarle un precio cierto". Art. 1274 del Código Civil, 31 LPRA sec. 9941. Entre las obligaciones del vendedor se encuentra la de "garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido". Art. 1287 del Código Civil, 31 LPRA sec. 9991. A su vez, nuestro Código Civil dispone que:

> *Cuando un defecto principal se descubre dentro del período de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo pasó al comprador.*

*La garantía se extiende durante el tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental. Íd.*

**-C-**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección,* 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el

expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. Íd., a la* pág. 628.

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

> *El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.*
>
> *Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.*
>
> *Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.* Ley Núm. 38-2017, 3 LPRA sec. 9675.

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P.*, *supra*, a la pág. 131. Además, dicho Foro ha reiterado que:

> *Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999); *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa la que tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa,

porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra,* a la pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

### III.

Según discutimos, en el presente caso el DACo emitió una "Resolución" por la cual declaró No Ha Lugar la "Querella" presentada por la Sra. García García, y desestimó la reclamación presentada contra los recurridos. Razonó que, a la recurrente se le honró la cubierta en garantía según sus términos y condiciones, y la evidencia demostró que: (1) el motor original fue reemplazado por uno nuevo, y (2) posterior a dicho reemplazo, el vehículo no presentó diagnóstico que ameritara reparación alguna.

En su escrito, la Sra. García García cuestiona esta determinación bajo el argumento de que "compró el vehículo, lo llevó en cinco (5) ocasiones por problemas del motor… [y] se presentó un video demostrando que aun con las supuestas reparaciones el motor seguía con algún tipo de problema".[5] Su contención es que, "si luego de las reparaciones y las visitas de servicios el vehículo seguía con los mismos problemas después de las reparaciones, esto demuestra que los querellados no corrigieron o no pudieron corregir los mismos".[6] No tiene razón.

Según los hechos probados, el vehículo adquirido por la recurrente hizo una reclamación en garantía debido a que el vehículo adquirido reflejó ciertos desperfectos en su

---

[5] Véase, pág. 11 del recurso.
[6] Véase, pág. 12 del recurso.

funcionamiento.[7]  Como parte de la cubierta, se reemplazó el motor original de la unidad,[8] el cual tenía el siguiente número de serie: 25547058T.[9]  No obstante, la Sra. García García alega que, los problemas de ruidos y vibraciones en el vehículo continuaban.[10] Con motivo de lo anterior, un técnico de investigación del DACO realizó una inspección del vehículo y llegó a las siguientes conclusiones:

> *Hallazgos de la inspección según alegaciones de la querella:*
>
> ***Se inspeccionó el motor del vehículo en cuestión y se pudo corroborar que no presentaba fallos al momento de la inspección****, el motor operó dentro de los parámetros del fabricante.*
>
> *Prueba de carretera:*
>
> ***El motor no produjo fallos durante la prueba de carretera****, el motor operó satisfactoriamente.[11]*

(Énfasis provisto).

A pesar de estos resultados, la recurrente alega que los problemas en el motor son aleatorios y presentó un video a esos efectos, el cual fue admitido en la vista administrativa como Exhibit #11.[12]  A su vez, en dicha audiencia el DACo tuvo la oportunidad de evaluar el testimonio de la propia Sra. García García.  No obstante, **el DACo no le otorgó credibilidad al testimonio de la recurrente, sino que, por el contrario, sostuvo que dicho testimonio "quedó impugnado mediante la prueba tanto documental como testimonial".[13]  A su vez, a pesar de que tuvo la oportunidad de evaluar el vídeo presentado por la recurrente, ésta no presentó prueba pericial o testimonial adicional para sustentar sus alegaciones de que el vehículo estaba inservible, más aún cuando la prueba testifical y**

---

[7] Véase, "Resolución" determinación de hechos #7.
[8] Véase, "Resolución" determinación de hechos #8.
[9] Véase, "Resolución" determinación de hechos #12.
[10] Véase, "Resolución" determinación de hechos #9.
[11] Véase, "Resolución" determinación de hechos #13 y #14; apéndice pág. 99.
[12] Véase, "Resolución" determinación de hechos #15.
[13] Véase, "Resolución" a la pág. 5; apéndice pág. 16.

**documental presentada por los recurridos demuestra que el motor estaba operando satisfactoriamente**. Precisamente, por esta razón fue que el DACo determinó que los desperfectos del vehículo fueron reparados adecuadamente por el centro de servicio, hecho que quedó sustentado mediante las hojas de servicio admitidas en evidencia.

Somos del criterio que, la determinación de la agencia recurrida está basada en evidencia sustancial que obra en el expediente administrativo y, como tal, debe ser sostenida por este Tribunal. **Del expediente apelativo no surge otra prueba que razonablemente reduzca o menoscabe el peso de la evidencia considerada por el ente administrativo hasta el punto que se demuestre que la decisión del organismo administrativo no está justificada**. Al contrario, determinamos que el proceder del DACo descansó en una base racional y, por consiguiente, procede que se valide la interpretación que realizó la agencia.

Evaluada la totalidad de la prueba presentada, concluimos que la determinación del DACo fue correcta. La parte recurrente no aportó evidencia suficiente para derrotar la presunción de corrección que caracteriza la decisión del foro administrativo. Es importante enfatizar que, al desempeñar nuestra función revisora, estamos obligados a considerar la especialización, experiencia y las cuestiones propias de la discreción o pericia de las agencias administrativa. En vista de lo anterior, consideramos que la agencia recurrida no actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. La totalidad de la evidencia que obra en el récord nos obliga a confirmar el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, se confirma la "Resolución"

recurrida, emitida por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones